IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VALNET INC. AND HASSAN YOUSSEF | |
| Plaintiffs, | Civil Action No. 1:25-cv-00507-JLH |
| v. | |
| THE WRAP NEWS INC., | |
| Defendant. | |

**DEFENDANT THE WRAP NEWS INC.'S CORRECTED\* OPENING BRIEF IN
SUPPORT OF ITS CONDITIONAL MOTION TO DISMISS PURSUANT TO
CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16, OR, ALTERNATIVELY,
FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

David L. Finger (#2556)
One Commerce Center
1201 N. Orange St., 7th Fl.
Wilmington, DE 19801
302-573-2525
dfinger@delawgroup.com

Jean-Paul Jassy (*pro hac vice*)
Jordyn Ostroff (*pro hac vice*)
Amanda Harris (*pro hac vice*)
JASSY VICK CAROLAN LLP
355 S. Grand Avenue, Suite 2540
Los Angeles, CA 90071
310-870-7048
jpjassy@jassyvick.com
jostroff@jassyvick.com
aharris@jassyvick.com

*Attorneys for Defendant*

Dated: June 19, 2025

\* Correcting citations.

## <u>TABLE OF CONTENTS</u>

Page

NATURE AND STAGE OF THE PROCEEDINGS ................................................... 1

SUMMARY OF ARGUMENT................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 2

ARGUMENT ......................................................................................................... 3

I.     THE COURT SHOULD APPLY CALIFORNIA LAW ................................. 3

     A.     AN ACTUAL CONFLICT EXISTS BETWEEN CALIFORNIA AND DELAWARE LAW ................................................................................ 3

     B.     CALIFORNIA HAS THE MOST SIGNIFICANT RELATIONSHIP TO THE CLAIMS AND PARTIES ........................................................... 4

     C.     THE COURT SHOULD APPLY CALIFORNIA'S ANTI-SLAPP STATUTE ............................................................................................ 6

           1.     California's Anti-SLAPP Statute Applies in Federal Court ................. 6

           2.     California's Anti-SLAPP Statute Is Construed Broadly........................ 6

           3.     Plaintiffs' State Law Claims Fall Within the Ambit of Section 425.16(e) ............................................................................................... 7

II.     GROUNDS FOR DISMISSAL UNDER SECTION 425.16 AND RULE 12(b)(6) .... 11

     A.     PLAINTIFFS' FIRST CLAIM FOR LIBEL *PER SE* FAILS FOR MULTIPLE REASONS ..................................................................... 11

           1.     Plaintiffs Must Identify the Allegedly Defamatory Statements, and They Must Be Specifically and Clearly Directed at the Plaintiffs........ 11

           2.     The Alleged Implications in Paragraph 65 Are Not Reasonable .......... 12

           3.     The Alleged Implication In Paragraph 65(2) Is Absolutely Privileged ............................................................................................. 14

           4.     The Vague Allegations in Paragraph 64 Cannot Support A Libel Claim..................................................................................................... 17

5.      Plaintiffs' Pleading of Actual Malice is Deficient ............................... 19

B.      THE THIRD AND FOURTH CLAIMS ALSO FAIL UNDER SECTION
        425.16 AND RULE 12(b)(6) ............................................................................. 20

CONCLUSION ...................................................................................................................... 20

**<u>TABLE OF AUTHORITIES</u>**

Page(s)

**<u>CASES</u>**

*Abbas v. Foreign Pol'y Grp., LLC*,
    975 F.Supp.2d 1 (D.D.C. 2013), *aff'd*, 783 F.3d 1328 (D.C. Cir. 2015) .........................5

*Abbott v. Gordon*,
    2008 WL 821522 (Del. Super. Mar. 27, 2008), *aff'd*, 957 A.2d 1 (Del. 2008) ........11, 17

*Accenture Global Svcs. GMBH v. Guidewire Software Inc.*,
    581 F.Supp.2d 654 (D. Del. 2008) .................................................................................21

*Agar v. Judy*,
    151 A.3d 456 (Del. Ch. 2017) ..................................................................................4, 18

*Annette F. v. Sharon S.*,
    119 Cal.App.4th 1146 (2004) ..........................................................................................8

*Baker v. Los Angeles Herald Examiner*,
    721 P.2d 87 (Cal. 1986)................................................................................................17

*Balzaga v. Fox News Network, LLC*,
    173 Cal.App.4th 1325 (2009) ........................................................................................12

*Baral v. Schnitt*,
    376 P.3d 604 (Cal. 2016) ................................................................................................6

*Barrett v. Rosenthal*,
    146 P.3d 510 (Cal. 2006) ................................................................................................8

*Bickling v. Kent Gen. Hosp., Inc.*,
    872 F.Supp. 1299 (D. Del. 1994)...................................................................................13

*Biro v. Conde Nast*,
    807 F.3d 541 (2d Cir. 2015)...........................................................................................19

*Blatty v. New York Times Co.*,
    728 P.2d 1177 (Cal. 1986)........................................................................................12, 20

*Bove v. Goldenberg*,
    2007 WL 446014 (Del. Super. Feb. 7, 2007).................................................................20

*Braun v. Chronicle Publ'g Co.*,
    52 Cal.App.4th 1036 (1997) ..........................................................................................10

*Briggs v. Eden Council for Hope & Opportunity*,
    969 P.2d 564 (Cal. 1999) ................................................................................................8

*Carver v. Bonds*,
    135 Cal.App.4th 328 (2005) ..........................................................................................18

*City of Colton v. Singletary*,
    206 Cal.App.4th 751 (2012) ............................................................................................7

*Collier v. Super. Ct.*,
   228 Cal.App.3d 1117 (1991) ..................................................................10

*Colt v. Freedom Commc'ns, Inc.*,
   109 Cal.App.4th 1551 (2003) ....................................................14, 16, 17

*Couch v. San Juan Unif. Sch. Dist.*,
   33 Cal.App.4th 1491 (1995) ..................................................................20

*Couch v. Verizon Comms Inc.*,
   105 F.4th 425 (D.C. Cir. 2024) ............................................................19

*Cox Broadcasting Corp. v. Cohn*,
   420 U.S. 469 (1975) ..............................................................................16

*Cross v. Cooper*,
   197 Cal.App.4th 357 (2011) ..................................................................10

*Diamond Ranch Acad., Inc. v. Filer*,
   117 F.Supp.3d 1313 (D. Utah 2015) ..................................................4, 5

*Doe v. Cahill*,
   884 A.2d 451 (Del. 2005) ......................................................................13

*Doe v. Gangland Prods., Inc.*,
   730 F.3d 946 (9th Cir. 2013) ................................................................11

*Elliot v. Lions Gate Ent'mt Corp.*,
   639 F.Supp.3d 1012 (C.D. Cal. 2022) ................................................2, 8

*Equilon Enters. v. Consumer Cause*,
   52 P.3d 685 (Cal. 2002) ..........................................................................7

*Ferlauto v. Hamsher*,
   74 Cal.App.4th 1394 (1999) ....................................................15, 17, 18

*FilmOn.com Inc. v. DoubleVerify Inc.*,
   439 P.3d 1156 (Cal. 2019) ......................................................................8

*Forsher v. Bugliosi*,
   608 P.2d 716 (Cal. 1980) ......................................................................12

*Gates v. Discovery Communications, Inc.*,
   101 P.3d 552 (Cal. 2004) ......................................................................16

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) ..............................................................................10

*Gilead Scis., Inc. v. Abbot Labs., Inc.*,
   2015 WL 1191129 (D. Del. Mar. 13, 2015) ......................................6, 7

*Greenbelt Publ. Ass'n v. Bresler*,
   398 U.S. 6 (1970) ............................................................................17, 18

*Hammersmith v. TIG Ins. Co.*,
   480 F.3d 220 (3d Cir. 2007) ..................................................................3

*Handelsman v. San Francisco Chron.*,
    11 Cal.App.3d 381 (1970) .................................................................................15

*Harkonen v. Fleming*,
    880 F.Supp.2d 1071 (N.D. Cal. 2012) ...............................................................9

*Hecimovich v. Encinal Sch. Parent Teacher Org.*,
    203 Cal.App.4th 450 (2012) ...............................................................................8

*Herring Networks, Inc. v. Maddow*,
    8 F.4th 1148 (9th Cir. 2021) ............................................................................6, 7

*Hesse v. Godiva Chocolatier, Inc.*,
    463 F. Supp. 3d 453 (S.D.N.Y. 2020) ...............................................................3

*Hicks v. Richard*,
    39 Cal.App.5th 1167 (2019) ............................................................................10

*Hoang v. Tran*,
    60 Cal.App.5th 513 (2021) ..............................................................................18

*Home Ins. Co. v. Zurich Ins. Co.*,
    96 Cal.App.4th 17 (2002) ................................................................................14

*Intercity Maint. Co. v. Local 254*,
    241 F.3d 82 (1st Cir. 2001) ..............................................................................18

*Int'l Const. Prods. LLC v. Caterpillar Inc.*,
    419 F.Supp.3d 791 (D. Del. 2019) .....................................................................2

*Jackson v. Mayweather*,
    10 Cal.App.5th 1240 (2017) ..............................................................................9

*James v. San Jose Mercury News*,
    17 Cal.App.4th 1 (1993) ..................................................................................18

*Jennings v. Telegram-Tribune Co.*,
    164 Cal.App.3d 119 (1985) .............................................................................15

*Johnson v. Warner Bros. Ent., Inc.*,
    2017 WL 588714 (D. Del. Feb. 14, 2017) ........................................................4

*Kilgore v. Younger*,
    640 P.2d 793 (Cal. 1982) ...........................................................................15, 16

*Layfield v. Beebe Med. Str., Inc.*,
    1997 WL 716900 (Del. Super. July 18, 1997), *aff'd on reh'g*, 1997 WL 817994 (Del.
    Super. Nov. 24, 1997) ......................................................................................11

*Letter Carriers v. Austin*,
    418 U.S. 264 (1974) ...................................................................................17, 18

*Lieberman v. KCOP Television, Inc.*,
    110 Cal.App.4th 156 (2003) ..............................................................................8

*Makaeff v. Trump Univ., LLC*,
    715 F.3d 254 (9th Cir. 2013) .............................................................................9

*Masson v. The New Yorker*,
    501 U.S. 496 (1991) ........................................................................................18

*Mayfield v. NASCAR, Inc.*,
    674 F.3d 369 (4th Cir. 2012) .......................................................................19

*McCafferty v. Newsweek Media Grp., Ltd.*,
    955 F.3d 352 (3d Cir. 2020) .........................................................................20

*McClatchy Newspapers, Inc. v. Super. Ct.*,
    189 Cal.App.3d 961 (1987) ..........................................................................14

*McDonald v. Wise*,
    769 F.3d 1202 (10th Cir. 2014) ...................................................................19

*McGarry v. Univ. of San Diego*,
    154 Cal.App.4th 97 (2007) ...........................................................................18

*Med. Marijuana, Inc. v. ProjectCBD.com*,
    46 Cal.App.5th 869 (2020) .............................................................11, 17, 20

*Medico v. Time, Inc.*,
    643 F.2d 134 (3d Cir. 1981) .........................................................................16

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) .....................................................................19

*Nadel v. Regents of the Univ. of Calif.*,
    28 Cal.App.4th 1251 (1994) ...........................................................................9

*Navellier v. Sletten*,
    52 P.3d 703 (Cal. 2002) ..................................................................................7

*Nelson Auto Center, Inc. v. Multimedia Holdings Corp.*,
    951 F.3d 952 (8th Cir. 2020) .......................................................................19

*Neville v. Chudacoff*,
    160 Cal.App.4th 1255 (2008) .........................................................................7

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964)........................................................................................12

*Nicosia v. De Rooy*,
    72 F.Supp.2d 1093 (N.D. Cal. 1999) ....................................................18, 19

*Nygård, Inc. v. Uusi-Kerttula*,
    159 Cal.App.4th 1027 (2008) .........................................................................8

*O'Gara v. Coleman*,
    2020 WL 752070 (Del. Ch. Feb. 14, 2020) ...................................................9

*Owens v. Lead Stories, LLC*,
    2021 WL 3076686 (Del. Super. July 20, 2021), *aff'd mem.*, 273 A.3d 275
    (Del. 2022) ..............................................................................................18, 20

*Page v. Oath Inc.*,
    270 A.3d 833 (Del. 2022) .......................................................................13, 19

*Paterno v. Super. Ct.*,
   163 Cal.App.4th 1342 (2008) ................................................................................14, 15

*Paucek v. Shaulis*,
   -- F.R.D. --, 2025 WL 1298457 (D.N.J. May 6, 2025) ................................................5, 6

*Perlman v. Vox Media, Inc.*,
   2020 WL 4730406 (Del. Super. Aug. 14, 2020), *aff'd mem,* 249 A.3d 375
   (Del. 2021) ........................................................................................................................12

*Pippen v. NBCUniversal Media, LLC*,
   734 F.3d 610 (7th Cir. 2013) ...........................................................................................19

*Read v. News-Journal Co.*,
   474 A.2d 119 (Del. 1984) ...........................................................................................15, 16

*Reader's Digest Assn. v. Super. Ct.*,
   690 P.2d 610 (Cal. 1984) .....................................................................................14, 19, 20

*Reeves v. ABC*,
   719 F.2d 602 (2d Cir. 1983) .............................................................................................16

*Riley v. Moyed*,
   529 A.2d 248 (Del. 1987) ...........................................................................................13, 17

*Schatz v. Republican State Leadership Comm.*,
   669 F.3d 50 (1st Cir. 2012) ..............................................................................................19

*ShotSpotter Inc. v. VICE Media, LLC*,
   2022 WL 2373418 (Del. Super.  Jun. 30, 2022) ..............................................................15

*Slawik v. News-Journal Co.*,
   428 A.2d 15 (Del. 1981) .......................................................................................13, 17, 18

*Soobzokov v. Lichtblau*,
   664 Fed.Appx. 163 (3d Cir. 2016) ...................................................................................13

*St. Amant v. Thompson*,
   390 U.S. 727 (1968) ..........................................................................................................20

*Stewart v. Rolling Stone, LLC*,
   181 Cal.App.4th 664 (2010) ...............................................................................................9

*Swartz v. KPMG, LLP*,
   476 F.3d 756 (9th Cir. 2007) ...........................................................................................10

*In re Syntax-Brillian Corp.*,
   573 Fed.Appx. 154 (3d Cir. 2014) .....................................................................................3

*Tavoulareas v. Piro*,
   817 F.2d 762 (D.C. Cir. 1987) .........................................................................................19

*Thomas v. Los Angeles Times Comms. LLC*,
   189 F.Supp.2d 1005 (C.D. Cal. 2002), *aff'd*, 45 Fed.Appx. 801 (9th Cir. 2002) ...........9

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*,
   190 F.3d 963 (9th Cir. 1999) .............................................................................................6

*Wheeler v. Wheeler,*
    639 Fed.Appx. 147 (3d Cir. 2016) .........................................................2, 8

*Woods Servs., Inc. v. Disability Advocates, Inc.,*
    342 F.Supp.3d 592 (E.D. Pa. 2018) ......................................................4, 6


## U. S. CONSTITUTION

First Amendment ..................................................................................7, 16, 20


## FEDERAL STATUTES

18 U.S.C. § 1960 ..................................................................................2, 7, 16

28 U.S.C. § 1404(a) .....................................................................................1


## FEDERAL RULES

Fed. R. Civ. P. 8 ............................................................................................6

Fed. R. Civ. P. 12 ..........................................................................................6

Fed. R. Civ. P. 12(b)(6) ...................................................................... *passim*

Fed. R. Civ. P. 56 ..........................................................................................6

Fed. R. Evid. 201 ................................................................................2, 3, 8, 9


## STATE STATUTES

10 Del. C. § 8136(a)(4) .................................................................................4

Cal. Civil Code § 47 .............................................................................14, 15

Cal. Civil Code § 47(d) ...................................................................14, 15, 16

Cal. Code Civ. Proc. § 425.16 .......................................................... *passim*

Cal. Code Civ. Proc. § 425.16(a) ................................................................4, 8

Cal. Code Civ. Proc. § 425.16(b)(1) ...........................................................4

Cal. Code Civ. Proc. § 425.16(e) ...............................................................7, 8

Cal. Code Civ. Proc. § 425.16(e)(1) ...........................................................4

Cal. Code Civ. Proc. § 425.16(e)(2) ..........................................................7, 8

Cal. Code Civ. Proc. § 425.16(e)(3) ..........................................................7, 8

Cal. Code Civ. Proc. § 425.16(e)(4) ..........................................................7, 8

## <u>OTHER AUTHORITIES</u>

Courtney J. Linn, *One-Hour Money Laundering: Prosecuting Unlicensed Money Transmitting Businesses Under 18 U.S.C. § 1960*, 8 U.C. Davis Bus. L.J. 138 (2007)............................................................................................16

Restatement (Second) of Conflict of Laws (1971) §§ 6(2)(a), (b), (c), (d), (e), (f), (g)..........................................................5

Restatement (Second) of Torts § 614....................................................13

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs Valnet Inc. ("Valnet") and Hassan Youssef ("Youssef") (collectively, "Plaintiffs") filed suit against Defendant The Wrap News Inc. ("The Wrap") on April 25, 2025. D.I. 1. The Court granted the stipulated extension for The Wrap to respond to the Complaint by June 19, 2025. Concurrently with this motion, The Wrap filed a motion to transfer venue pursuant to 28 U.S.C. § 1404(a). This motion to dismiss—filed by The Wrap pursuant to California Code of Civil Procedure § 425.16, or, in the alternative, the Federal Rules of Civil Procedure, Rule 12(b)(6)—is conditional and only requires review by this Court if the motion to transfer is denied.

## SUMMARY OF ARGUMENT

1.    The Court should apply California law to this matter because an actual conflict exists between the scope and application of California's and Delaware's respective anti-SLAPP[1] statutes, and California has the most significant relationship to the claims and parties. California's anti-SLAPP statute applies to state law claims in federal courts, including in this Court.

2.    The Wrap satisfied its burden under the first step in California's anti-SLAPP analysis because Plaintiffs' first count (for libel *per se*), third count (for unfair competition and deceptive trade practices), and fourth count (for tortious interference with prospective business relations) (collectively, the "State Law Claims"), arise from The Wrap's speech and conduct in furtherance of speech in connection with matters of public interest.

3.    Plaintiffs cannot satisfy their burden under the second step of California's anti-SLAPP analysis to demonstrate a probability of prevailing on the merits of their State Law Claims, and the State Law Claims fail to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The first claim for libel *per se* fails because: the allegedly defamatory statements were

---

[1] SLAPP is an acronym that stands for "Strategic Lawsuit Against Public Participation."

not published and/or not reasonably implied as a matter of law, and not about Valnet; are absolutely privileged as fair reports of court records; are constitutionally protected opinions and/or hyperbole; are substantially true; and Plaintiffs, as public figures, did not plead actual (constitutional) malice with the requisite particularity. The third and fourth claims fail because they are ancillary and derivative of the libel claim and are barred on the same constitutional and privilege grounds as the libel claim, are superfluous and therefore must be dismissed, and are insufficiently pleaded.

## STATEMENT OF FACTS

Youssef is the co-founder and CEO of Valnet. D.I. 1 ¶¶ 8, 9. Youssef made his name and fortune in the online adult entertainment industry, including with his company called Mansef Inc. *Id.* ¶ 40 (referring to Mansef as "Youssef's company"); D.I. 1-1; Ex. 10. In 2009, Mansef was the target of a forfeiture complaint filed by the U.S. Government for alleged violations of 18 U.S.C. § 1960 that culminated in a Consent Order entered in the Northern District of Georgia where Mansef forfeited $2.2 million. D.I. 1 ¶¶ 34-37; Exs. 1–4.[2] In 2009, Youssef was part of a group that founded the porn website Brazzers, which was a "silent partner" in "a separate company called Interhub" that operated another porn website, pornhub.com. D.I. 1-1 at 9. Interhub ran into trouble in 2009 when one of Pornhub's users posted a video of a 14-year-old girl being raped (the "Video"), and Interhub did not promptly remove the Video when asked. *Id.*

Valnet calls itself as "a leader in the digital media publication industry," with "27 publications and brands [that] have hundreds of millions of readers and viewers each month and

---

[2] *See* Ex. 1 ¶¶ 3-7, 14–15, 35–36; Ex. 2 at 3; Ex. 3 ¶¶ 3–4; Ex. 4 at 1–4. The Wrap requests that the Court take judicial notice of Exhibits 1–4, which are true and correct copies of records from the Northern District of Georgia, referenced in the Complaint, D.I. 1 ¶ 36. Fed. R. Evid. 201; *Elliot v. Lions Gate Ent'mt Corp.*, 639 F.Supp.3d 1012, 1021 (C.D. Cal. 2022) (in connection with anti-SLAPP motion, taking judicial notice of court records); *Wheeler v. Wheeler*, 639 Fed.Appx. 147, 150 n.10 (3d Cir. 2016) (same); *Int'l Const. Prods. LLC v. Caterpillar Inc.*, 419 F.Supp.3d 791, 798–99 (D. Del. 2019) (taking judicial notice of documents referenced in complaint).

generate billions of advertising impressions each month." D.I. 1 ¶ 52; *see also id.* ¶¶ 8–9, 53. [3]

The Wrap is a California-based leading and authoritative digital news organization covering the business of entertainment and media. *See* D.I. 1 ¶ 10. On March 20, 2025, The Wrap published an article titled *Valnet Blues: How Online Porn Pioneer Hassan Youssef Built a Digital Media 'Sweatshop'* (the "Article"), which is attached to the Complaint. D.I. 1-1; *see also* https://www.thewrap.com/valnet-labor-lawsuit-hassan-youssef-digital-media-sweat-shop/.    The Article discusses, *inter alia*, Youssef's background, Valnet's rise, the 2009 litigation in the Northern District of Georgia, the Video, and Valnet's business practices, including defending lawsuits for allegedly exploiting employees and independent contractors. *Id.* Each claim in the Complaint arises from the Article. *See generally* D.I. 1.

## ARGUMENT

## I.    THE COURT SHOULD APPLY CALIFORNIA LAW

### A. AN ACTUAL CONFLICT EXISTS BETWEEN CALIFORNIA AND DELAWARE LAW

Delaware's choice-of-law inquiry first asks if there is an actual conflict between the potentially applicable laws. *In re Syntax-Brillian Corp.*, 573 Fed.Appx. 154, 162 (3d Cir. 2014). "If the laws of each jurisdiction are the same, or if they would lead to the same result, 'then there is no conflict at all, and conflict of law analysis is unnecessary.'" *Id.* (quoting *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007)).

Here, there is a conflict between the potentially applicable laws of California (where The

---

[3] *See also* Exhibits 5 & 6. The Wrap requests that the Court take judicial notice of Exhibits 5 & 6, which are true and correct copies of pages from Valnet's website. Fed. R. Evid. 201. *See also Hesse v. Godiva Chocolatier, Inc.*, 463 F.Supp.3d 453, 463 (S.D.N.Y. 2020) (on a 12(b)(6) motion "court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination"; citing cases (cleaned up)).

Wrap has its principal place of business) and Delaware (where Plaintiffs, who are Canadian, filed suit and The Wrap is merely incorporated). In particular, California's anti-SLAPP law applies to any state law claim arising from speech or conduct in furtherance of speech rights—such as the claims here. *See* Cal. Code Civ. Proc. §§ 425.16(b)(1), (e)(1); *see* Section I.C.3. The statute is to be "construed broadly." Cal. Code Civ. Proc. § 425.16(a). Delaware's anti-SLAPP law, on the other hand, is narrow, applying only to cases involving permits, land-use applications, and similar "entitlement[s] for use or permission to act from any government body" that would not apply here. 10 Del. C. § 8136(a)(4). Delaware courts have expressly acknowledged that California's anti-SLAPP law is far "more sweeping" than Delaware's, such that California's law provides "an expansive shield against any lawsuit brought with an intent to muzzle or inflict retribution for free speech." *Agar v. Judy*, 151 A.3d 456, 474, 477 (Del. Ch. 2017).

## B. CALIFORNIA HAS THE MOST SIGNIFICANT RELATIONSHIP TO THE CLAIMS AND PARTIES

After determining that an actual conflict exists, courts next determine "which state has the most significant relationship to the claims and to the parties." *Johnson v. Warner Bros. Ent., Inc.*, 2017 WL 588714 at *3 (D. Del. Feb. 14, 2017). Here, California has the more significant relationship to the claims and parties. Courts have repeatedly concluded that states with more robust anti-SLAPP laws—like California—have the greater "interest" in application of their laws. *See, e.g., Diamond Ranch Acad., Inc. v. Filer*, 117 F.Supp.3d 1313, 1323 (D. Utah 2015) (applying California's anti-SLAPP law to a suit brought by a Utah plaintiff against a California defendant, alleged to have posted defamatory statements on the internet); *Woods Servs., Inc. v. Disability Advocates, Inc.*, 342 F.Supp.3d 592, 607–08 (E.D. Pa. 2018) (concluding that New York had a stronger interest in applying its anti-SLAPP law, even where the parties' relationship "revolve[d] around Pennsylvania" and the alleged conduct took place there, because New York had an anti-

4

SLAPP law and Pennsylvania did not); *Paucek v. Shaulis*, -- F.R.D. --, 2025 WL 1298457 at *19–21 (D.N.J. May 6, 2025) (concluding that New Jersey law applied because New Jersey had a stronger interest in application of its anti-SLAPP law, where Delaware's and Maryland's anti-SLAPP statutes were significantly narrower).

To ensure "California's strong interest in protecting its citizens' free speech activities," California's law should apply wherever those free speech activities are challenged. *Diamond Ranch*, 117 F.Supp.3d at 1324. Thus, "the needs of the interstate … system[]," and "the protection of justified expectations" of California speakers' interest in "certainty, predictability and uniformity of result" all point to application of the law of California's anti-SLAPP law. Restatement (Second) of Conflict of Laws (1971) ("Rest. Conflict of Laws") §§ 6(2)(a), (d), (f). Likewise, the "relevant policies of other interested states" and "the basic policies underlying the particular field of law" both point strongly to the application of California law. *Id.* §§ 6(2)(c), (e). Conversely, Delaware has no obvious interest in applying its own anti-SLAPP law to California speakers when the speech at issue has no particular connection to Delaware. *Cf. id.* § 6(2)(b) (choice-of-law analysis considers "the relevant policies of the forum"). "California…has a well-developed body of case law" interpreting California's anti-SLAPP law—so applying California's anti-SLAPP law will not negatively impact the Court's interest in the "ease in the determination and application of the law to be applied." *Abbas v. Foreign Pol'y Grp., LLC,* 975 F.Supp.2d 1, 9 (D.D.C. 2013), *aff'd*, 783 F.3d 1328 (D.C. Cir. 2015); Rest. Conflict of Laws § 6(2)(g).

**C.  THE COURT SHOULD APPLY CALIFORNIA'S ANTI-SLAPP STATUTE**

**1.  California's Anti-SLAPP Statute Applies in Federal Court**

The Ninth Circuit has made clear that California's anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16 ("Section 425.16"), applies in federal cases with state law claims because the statute was

"crafted to serve an interest not directly addressed by the Federal Rules: the protection of 'the constitutional rights of freedom of speech and petition for redress of grievances.'" *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 972–73 (9th Cir. 1999). Courts in the Third Circuit have also held that state anti-SLAPP laws, including California's anti-SLAPP law, apply in federal court. *See, e.g.*, *Gilead Scis., Inc. v. Abbot Labs., Inc.*, 2015 WL 1191129, at *9 (D. Del. Mar. 13, 2015) (granting defendants' motion brought pursuant to California's anti-SLAPP law); *Paucek*, 2025 WL 1298457, at *21 (applying New Jersey's anti-SLAPP law to defamation and tortious interference claims); *Woods Servs.*, 342 F.Supp.3d at 610 (counterclaimant adequately stated counterclaim under New York's anti-SLAPP statute).

Motions brought pursuant to California's anti-SLAPP statute in federal court are divided "into two categories: motions that challenge the legal sufficiency of complaints and motions that challenge the factual sufficiency of complaints. The former of these categories are analyzed pursuant to Rule 12; the latter are analyzed pursuant to Rule 56." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155-56 (9th Cir. 2021). This anti-SLAPP motion is brought pursuant to Rule 12. *See Gilead Scis.*, 2015 WL 1191129, at *3 (analyzing sufficiency of complaint in face of anti-SLAPP motion brought pursuant to Section 425.16 under Rules 8 and 12).

## 2.  California's Anti-SLAPP Statute Is Construed Broadly

Under California law, "[r]esolution of an anti-SLAPP motion involves two steps." *Baral v. Schnitt*, 376 P.3d 604, 608 (Cal. 2016). Under the first step, the defendant must show that "the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech[.]'" *Equilon Enters. v. Consumer Cause*, 52 P.3d 685, 694 (Cal. 2002); *Herring Networks*, 8 F.4th at 1155 (same); *Gilead Scis.*, 2015 WL 1191129, at *3. "If the defendant satisfies" the first step, "the burden then shifts to the plaintiff to establish a reasonable probability

that it will prevail on its claim in order for that claim to survive dismissal." *Herring Networks*, 8 F.4th at 1155; *Gilead Scis.*, 2015 WL 1191129, at *3. "The district court must grant the defendant's motion . . . if the plaintiff presents an insufficient legal basis for the claims or no reasonable jury could find for the plaintiff." *Herring Networks*, 8 F.4th at 1155 (cleaned up).[4] Section 425.16 must be construed "broadly" to further the purpose of "allowing for early dismissal of meritless First Amendment cases aimed at chilling expression through costly, time-consuming litigation." *Id.*

### 3.  Plaintiffs' State Law Claims Fall Within the Ambit of Section 425.16(e)

Plaintiffs' State Law Claims all arise from the Article. D.I. 1 ¶¶ 1–2, 61–72, 84–108. A defendant need only show that the alleged conduct "fits *one* of the [four] categories spelled out in section 425.16, subdivision (e)." *Navellier v. Sletten*, 52 P.3d 703, 708 (Cal. 2002) (emphasis added). Here, the State Law Claims fall within Sections 425.16(e)(2), (e)(3), and (e)(4).

Section 425.16(e)(2) protects statements about judicial proceedings. Courts take an "expansive view" of what falls "within the scope of section 425.16," including "statements to persons who are not parties or potential parties to litigation." *Neville v. Chudacoff*, 160 Cal.App.4th 1255, 1268, 1270 (2008). Portions of the Article concern litigation involving Plaintiffs, including the case in the Northern District of Georgia where "Youssef's company, Mansef Inc." was accused of violating 18 U.S.C. § 1960, a money laundering statute, and forfeited over $2.2 million to the Government, as well as a California-based class action employment lawsuit against Valnet that is linked to in the Complaint. *See* D.I. 1 ¶¶ 32–36, 65, 66; *see also id.* ¶¶ 26, 42; D.I. 1-1; Exs. 1–4, 8; *see also* Ex. 7.[5] Courts routinely find that reports about litigation fall within the ambit of Section

---

[4] The Court may strike *portions* of claims under Section 425.16. *City of Colton v. Singletary*, 206 Cal.App.4th 751, 774 (2012).

[5] The Wrap requests that the Court take judicial notice of Exhibits 7 & 8, which are court records filed in California. Fed. R. Evid. 201; *Elliot*, 639 F.Supp.3d at 1021; *Wheeler*, 639 Fed.Appx. at 150. *See also* Note 3.

425.16(e)(2).[6]

Sections 425.16(e)(3) and (e)(4) protect speech and conduct that occurred in connection with an "issue of public interest."[7] "Like the SLAPP statute itself, the question whether something is an issue of public interest must be construed broadly." *Hecimovich v. Encinal Sch. Parent Teacher Org.*, 203 Cal.App.4th 450, 464 (2012). *See also* Cal. C. Civ. Proc. § 425.16(a). "[A]n issue of public interest" under Section 425.16(e) "is any issue in which the public is interested." *Nygård, Inc. v. Uusi-Kerttula*, 159 Cal.App.4th 1027, 1042 (2008). Courts are to consider "whether the subject of the speech or activity was a person or entity in the public eye or could affect large numbers of people beyond the direct participants; and whether the activity occur[red] in the context of an ongoing controversy, dispute or discussion." *FilmOn.com Inc. v. DoubleVerify Inc.*, 439 P.3d 1156, 1162 (Cal. 2019) (cleaned up). *See also Lieberman v. KCOP Television, Inc.*, 110 Cal.App.4th 156, 166 (2003) (newsgathering falls within the scope of Section 425.16).

The challenged portions of the Article involve issues of public interest for multiple reasons. Valnet and Youssef are both high-profile figures in the media industry. "[T]here is a public interest which attaches to people who, by their accomplishments, mode of living, professional standing or calling, create a legitimate and widespread attention to their activities." *Stewart v. Rolling Stone, LLC*, 181 Cal.App.4th 664, 677–78 (2010); *Jackson v. Mayweather*, 10 Cal.App.5th 1240, 1248, 1264–66 (2017) (public interest standard met where parties were "in the public eye"). In the Complaint, Valnet describes itself as "a leader in the digital media publication industry," with "27

---

[6] *See, e.g.*, *Briggs v. Eden Council for Hope & Opportunity*, 969 P.2d 564, 568–69 (Cal. 1999); *Annette F. v. Sharon S.*, 119 Cal.App.4th 1146, 1160–61 (2004).

[7] Section 425.16(e)(3) also requires that the speech occur in a "public forum," which includes websites. *Barrett v. Rosenthal*, 146 P.3d 510, 514 n.4 (Cal. 2006) ("Web sites accessible to the public … are 'public forums' for purposes of the anti-SLAPP statute"). Plaintiffs allege the Article was published online. D.I. 1 ¶ 1. Section 425.16(e)(4) has no "public forum" requirement.

publications and brands [that] have hundreds of millions of readers and viewers each month and generate billions of advertising impressions each month." D.I. 1 ¶¶ 52, 53; *Nadel v. Regents of the Univ. of Calif.*, 28 Cal.App.4th 1251, 1270 (1994) (a plaintiff can reveal himself to be "a person . . . in the public eye" by virtue of the allegations in his complaint); *see also Thomas v. Los Angeles Times Comms. LLC*, 189 F.Supp.2d 1005, 1011 (C.D. Cal. 2002) (same, in the context of an anti-SLAPP motion), *aff'd*, 45 Fed.Appx. 801 (9th Cir. 2002). Valnet further boasts on its website of being "the world's leading digital media investment company" with "over 300 million monthly visitors." *See* Ex. 5.

And, although he may not be a household name, Youssef undisputedly was a pioneer in the online porn industry, and is the CEO and Co-Founder of the behemoth Valnet media brand, which has been the subject of media attention by *People*, *BBC*, *Vanity Fair*, and *CNN*. D.I. 1 ¶ 9; Exs. 6, 11–17.[8] *Harkonen v. Fleming*, 880 F.Supp.2d 1071, 1080–81 (N.D. Cal. 2012) (CEO of biotechnology company); *O'Gara v. Coleman*, 2020 WL 752070 at *10–11 (Del. Ch. Feb. 14, 2020) (board chairman and president of corporation). Youssef is a public figure because he makes public statements about Valnet's brands' successes and business practices, Exs. 16, 17, and as Valnet's CEO with "27 publications and brands" with "hundreds of millions" of monthly viewers under his purview, D.I. 1 ¶¶ 52, 53, he can exercise "self-help" in the media sphere, and clearly has "a more realistic opportunity to counteract false statements than private individuals normally enjoy." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344 (1974).[9]

---

[8] The Wrap requests that the Court take judicial notice of the existence (but not the truth) of Exhibits 11–17, which are true and correct copies of online media coverage of Valnet and its business practices. Fed. R. Evid. 201; *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 259 (9th Cir. 2013) (judicially noticing "newspaper and magazine articles" and "web pages" "to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true").

[9] Yousef is at least a limited purpose public figure because he "thrust [himself] to the forefront of particular public controversies in order to influence the resolution of the issues involved," and

Moreover, the issues on which the Article reports—including Youssef's prior company's money laundering matter, the 2009 incident involving the Video, and Valnet's exploitative employment practices—all involve matters of public interest,[10] and have been the subject of significant independent media attention, "ongoing controversy, dispute, or discussion." *Cross*, 197 Cal.App.4th at 383 (courts "broadly construe" what is considered an "ongoing controversy, dispute or discussion"); Exs. 9–17.[11]  The Wrap's reporting on these issues—which has allegedly been "widely shared by press outlets in various media, and continues to be republished and reported by other news outlets and on social media," D.I. 1 ¶ 18—"in some manner itself contribute[d]" to the public discussion of issues related to the conduct of a major media company and its CEO and co-founder, *Hicks v. Richard*, 39 Cal.App.5th 1167, 1176 (2019) (courts do not normatively judge "the social utility of the speech"; rather, they "examine whether a defendant—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest"). The Wrap easily satisfies the first step in California's anti-SLAPP analysis.

## II.    GROUNDS FOR DISMISSAL UNDER SECTION 425.16 AND RULE 12(b)(6)

Where, as here, "the defendant meets its burden [at step one of the anti-SLAPP analysis], the burden shifts to plaintiff to demonstrate a probability of prevailing on the merits of each of

---

therefore "invite[s] attention and comment."  *Gertz.* 418 U.S. at 345. In particular, he voluntarily entered the controversial world of commercialized online pornography, including through his company Mansef, and he co-founded and now runs Valnet, one of the largest digital media holding companies in the world. His experiences, ethics, and leadership roles in those capacities—whether they involve "money transmitting" decisions or wage and hour issues—are open to public scrutiny.

[10] *See, e.g.*, *Braun v. Chronicle Publ'g Co.*, 52 Cal.App.4th 1036, 1041 (1997) (mismanagement and irregular business practices constituted matter of public concern); *Cross v. Cooper*, 197 Cal.App.4th 357, 375 (2011) (sexual abuse of minors is a matter of public concern); *Collier v. Super. Ct.*, 228 Cal.App.3d 1117, 1123 (1991) (public interest in money laundering).

[11] *See* Note 8. Some of these articles were also discussed and linked to in the Article, which itself was attached to the Complaint, and are therefore also appropriately considered as incorporated by reference. *Swartz v. KPMG, LLP*, 476 F.3d 756, 763 (9th Cir. 2007); D.I. 1-1.

plaintiff's claims" that fall within the anti-SLAPP statute's ambit. *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 953 (9th Cir. 2013). Because The Wrap satisfied its burden under step one of the anti-SLAPP analysis, Plaintiffs bear the burden on each of their State Law Claims. Even if Section 425.16 were not applied by the Court, such claims also cannot survive under Rule 12(b)(6).

## A. PLAINTIFFS' FIRST CLAIM FOR LIBEL *PER SE* FAILS FOR MULTIPLE REASONS

### 1. Plaintiffs Must Identify the Allegedly Defamatory Statements, and They Must Be Specifically and Clearly Directed at the Plaintiffs

A libel plaintiff must identify the allegedly defamatory statements. *Med. Marijuana, Inc. v. ProjectCBD.com*, 46 Cal.App.5th 869, 893 (2020) ("statements alleged to constitute libel must be specifically identified . . . in the complaint"); *Layfield v. Beebe Med. Str., Inc.*, 1997 WL 716900 at *6 (Del. Super. July 18, 1997) ("It is essential for Plaintiff to identify the defamatory communication, otherwise, 'it is impossible to know whether the communication gives rise to a cause of action.'"), *aff'd on reh'g*, 1997 WL 817994 (Del. Super. Nov. 24, 1997); *Abbott v. Gordon*, 2008 WL 821522 at *24 (Del. Super. Mar. 27, 2008), *aff'd*, 957 A.2d 1 (Del. 2008).

Here, although the Complaint rambles about other purportedly objectionable content in the Article, the count for libel *per se* identifies only two purportedly libelous statements from the Article: (1) "Youssef was accused of money laundering and was forced to pay a $2.1 million fine as punishment"; and (2) "Youssef somehow condoned, facilitated or allowed the publication of the Video, and ignored repeated pleas by the victim of the rape depicted in the Video to have the Video removed." D.I. 1 ¶ 65; *see also id.* ¶ 66. Neither of those quotes appears in the Article, and neither is about Valnet. *See Blatty v. New York Times Co.*, 728 P.2d 1177, 1182 (Cal. 1986) (a defamation plaintiff cannot "constitutionally establish liability" unless the statements at issue are "of and concerning" him either by name or by "clear implication."); *Perlman v. Vox Media, Inc.*, 2020 WL

4730406 at *2 (Del. Super. Aug. 14, 2020) (same, citing *Blatty*), *aff'd mem,* 249 A.3d 375 (Del. 2021). For those reasons alone, the libel claim fails as to both Plaintiffs, and certainly as to Valnet. At most, the Complaint alleges libel-by-implication against Youssef alone. But that fails too.

**2.    The Alleged Implications in Paragraph 65 Are Not Reasonable**

The United States Supreme Court recognizes "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open[.]" *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). For this reason, courts set a very high standard for finding that a defamatory implication is reasonable. For example, in *Forsher v. Bugliosi*, 608 P.2d 716 (Cal. 1980), the California Supreme Court held, as a matter of law, that a book "neither expressly nor by fair implication charges [the plaintiff] with killing or aiding or abetting the killing" of a murder victim—even though the book repeatedly identified the plaintiff and seemingly linked him to the murder—and held that courts "must . . . refrain from scrutinizing what is not said to find a defamatory meaning which the article does not convey to a lay reader." *Id.* at 722–23. In *Balzaga v. Fox News Network, LLC*, the court held that a "defamatory meaning must be found, if at all, in a reading of the publication as a whole," as "[d]efamation actions cannot be based on snippets taken out of context." 173 Cal.App.4th 1325, 1329, 1338–43 (2009) (internal quotation marks omitted) (affirming the grant of an anti-SLAPP motion, and holding that a "Wanted" poster with the plaintiffs' photos and the caption "MANHUNT AT THE BORDER," did not, in context, imply that plaintiffs were "wanted" by law enforcement).

The Delaware Supreme Court likewise rejects unreasonable allegedly defamatory implications as a matter of law. *See, e.g., Doe v. Cahill*, 884 A.2d 451, 467 (Del. 2005) (rejecting plaintiff's proffered interpretations, and holding they were "not sufficient to give rise to a *prima facie* case for defamation liability"); *Riley v. Moyed*, 529 A.2d 248, 252 (Del. 1987) (holding that

"an ordinary reader" would not draw the defamatory "inference" or "implication" urged by plaintiff). *Cf. Page v. Oath Inc.*, 270 A.3d 833, 842 (Del. 2022) (on motion to dismiss defamation claim, court must accept "only those reasonable inferences that logically flow from the face of the complaint," which includes documents "referred to in a complaint," and "is not required to accept every strained interpretation of the allegations proposed by the plaintiff") (cleaned up).[12]

Here, the Article does not state—and cannot reasonably be understood to imply—that Youssef condoned or controlled the Video. Read in context and as a whole, the Article notes that Youssef was part of a "group" that founded the porn website Brazzers, which became "silent partners" in "a separate company called Interhub" that operated the domain "pornhub.com," and that "Interhub ran into trouble in 2009" when the Video was posted on Pornhub and not removed promptly. D.I. 1-1 at 9. The Complaint does not allege that any of the foregoing is false, and *nowhere* does the Article state, imply or even suggest that *Youssef* "condoned, facilitated or allowed the publication of the Video," or that he was aware of and yet "ignored" the victim's pleas to have it removed from Pornhub. *See generally* D.I. 1, D.I. 1-1. To the contrary, the Article expressly distances Youssef from the operations of Pornhub by identifying him as part of a *group* that were "*silent* partners" in a "*separate* company" (Interhub).

The other purported statement identified in Paragraph 65 of the Complaint also is not reasonably drawn from the Article, which does not state that *Youssef* was accused of money laundering or that *Youssef* paid any money to anyone. The Article states that it was the Youssef brothers' "online porn business" (identified in the Article as Mansef) that was targeted in 2009 by

---

[12] *Accord Soobzokov v. Lichtblau*, 664 Fed.Appx. 163, 168 (3d Cir. 2016) (affirming dismissal of defamation claim, rejecting unreasonable defamatory implications); *Bickling v. Kent Gen. Hosp., Inc.*, 872 F.Supp. 1299, 1307 (D. Del. 1994) ("Whether a statement is capable of bearing a particular meaning … is a question for the court," citing Restatement (Second) of Torts § 614); *Slawik v. News-Journal Co.*, 428 A.2d 15, 17 (Del. 1981) (same).

federal authorities, not plaintiff Youssef personally. D.I. 1-1. Even assuming *arguendo* that implication was about Youssef—which The Wrap does not concede—it is still protected speech.

### 3.    <u>The Alleged Implication In Paragraph 65(2) Is Absolutely Privileged</u>

California law, Delaware law and the common law (importing constitutionally-based principles) all provide protection for fair reports of judicial and other official proceedings and records. California Civil Code § 47(d) ("Section 47(d)") provides a robust and *absolute* privilege for fair and true reports about judicial proceedings, regardless of fault, motive or even knowledge of falsity. *McClatchy Newspapers, Inc. v. Super. Ct.*, 189 Cal.App.3d 961, 974-76 (1987). Whether a publication falls within the scope of Section 47 is a question of law for the court, *id.* at 976–77, and "[a]ny doubt as to whether the privilege applies is resolved in favor of applying it," *Home Ins. Co. v. Zurich Ins. Co.*, 96 Cal.App.4th 17, 23 (2002). A defendant's report need only capture the "gist or sting" of what was in the records. *Reader's Digest Assn. v. Super. Ct.*, 690 P.2d 610, 621 n.13 (Cal. 1984). A report is considered "fair and true" even if it does not resolve what actually happened or fails to present the plaintiff's version of facts or context, *Paterno v. Super. Ct.*, 163 Cal.App.4th 1342, 1352–55 (2008), and even if it contains "some errors," *Colt v. Freedom Commc'ns, Inc.*, 109 Cal.App.4th 1551, 1559 (2003).

A Delaware court applying California law recognized that Section 47(d) is "'applied broadly.'" *ShotSpotter Inc. v. VICE Media, LLC*, 2022 WL 2373418 at *8 (Del. Super.  Jun. 30, 2022). Indeed, courts applying Section 47(d) "all permit a certain degree of flexibility/literary license in defining 'fair report.'" *Jennings v. Telegram-Tribune Co.*, 164 Cal.App.3d 119, 125 (1985). *See also ShotSpotter*, 2022 WL 2373418, at *8 (same). This is consistent with Delaware law which also provides an absolute privilege for fair reporting of official actions or proceedings even if "vivid words" are used in the style of the report. *Read v. News-Journal Co.*, 474 A.2d 119,

120–21 (Del. 1984). *Accord Jennings*, 164 Cal.App.3d at 123–224, 127 (description of conviction for failing to file tax returns as "tax fraud" and "tax evasion" was "colorful," "overblown" and "exaggerated," but still absolutely privileged under Section 47(d)).

Legal precision is not required to apply the privilege. Courts hold that a "report is not to be judged by the standard of accuracy that would be adopted if it were the report of a professional law reporter or a trained lawyer." *Handelsman v. San Francisco Chron.*, 11 Cal.App.3d 381, 387–88 (1970) (holding it was a fair and true report to describe a claim for civil conversion as "outright theft"). *See also Paterno*, 163 Cal.App.4th at 1354 ("courts will not engage in a 'hermeneutical exercise' dissecting the reporter's efforts in a legalistic post-mortem"); *Ferlauto v. Hamsher*, 74 Cal.App.4th 1394, 1404 (1999) (courts analyze reports "from the perspective of the average reader, not a person trained in the technicalities of the law"). In *Kilgore v. Younger*, 640 P.2d 793 (Cal. 1982), a government report listed individuals suspected of organized crime. The plaintiff sued because defendants' articles did not identify the "specific organized criminal activity" of which he was suspected, supposedly implying he was accused of all manner of criminal activity. *Id.* at 796. The court held that the articles were protected under Section 47, as the "average reader … would reasonably interpret the articles to imply only that [plaintiff] was connected in some fashion with organized crime." *Id.* at 797. And in *Colt*, the plaintiffs complained that newspaper articles did not accurately explain how they entered into a consent decree in the face of allegations by the SEC. 109 Cal.App.4th at 1558. The court rejected plaintiffs' efforts to "draw fine distinctions between the misconduct charged in the SEC complaint and defendants' descriptions," and, although acknowledging that there were "some errors" in the defendants' articles, the court declined "to engage in a detailed parsing of words, phrases, and sentences to note the subtle differences between [plaintiffs'] misconduct and that noted in the articles." *Id.* at 1558–59.

In addition to the absolute privileges afforded by California and Delaware law, there also is a common law fair report privilege rooted in the First Amendment as recognized in *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 492–96 (1975), and its progeny, including *Gates v. Discovery Communications, Inc.*, 101 P.3d 552, 562 (Cal. 2004), and *Read,* 474 A.2d at 120–21. *Accord Reeves v. ABC*, 719 F.2d 602, 606–07 (2d Cir. 1983) (after applying California's Section 47(d) privilege to allegedly defamatory news broadcast, the Court noted the broadcast was also protected by similar constitutionally-based privilege); *Medico v. Time, Inc.*, 643 F.2d 134, 143–46 (3d Cir. 1981) (noting constitutional foundations to fair report privilege).

Here, court records make clear that Mansef Inc., which *Plaintiffs* describe as "Youssef's company," forfeited over $2.2 million in a Consent Order as a result of a claim brought by the United States under 18 U.S.C. § 1960—which is part of a complex anti-money laundering statutory regime[13]—for operation of an unlicensed money transmitting business. D.I. 1 ¶¶ 31–35. With those facts amply supported by court records including a Consent Order, *see* Exs. 1–4, even the asserted implication falls within the flexibility afforded by California's, Delaware's and common law fair report privileges to state or imply that Youssef was accused of money laundering and had to pay a $2.2 million fine.[14] The Court need not and should not "engage in the hermeneutical exercise to which [Youssef has] challenged [the Court]." *Colt*, 109 Cal.App.4th at 1559.

### 4.  The Vague Allegations in Paragraph 64 Cannot Support A Libel Claim

Paragraph 64 does not identify any specific allegedly defamatory material as a libel claim must, *see Med. Marijuana* and *Abbott*, *supra,* but instead vaguely gripes that the Article "accuse[s]

---

[13] An article written by a federal prosecutor roughly contemporaneously with the US's forfeiture action against Mansef explains how 18 U.S.C. § 1960 is a complex and powerful anti-money laundering law. Courtney J. Linn, *One-Hour Money Laundering: Prosecuting Unlicensed Money Transmitting Businesses Under 18 U.S.C. § 1960,* 8 U.C. Davis Bus. L.J. 138 (2007).

[14] The Wrap maintains that the Article made no such statement or implication.

Youssef and Valnet of improper conduct[.]" D.I. 1 ¶ 64. This nebulous allegation may be intended to sweep up random unverifiable—and thus non-actionable—statements and purported implications from the Article concerning Youssef as a person, *id.* ¶¶ 25–26, 39–41, and Valnet as a business, *id.* ¶¶ 39–43. But such material also cannot support a libel claim.

California and Delaware both look to the content, context and verifiability of the language of allegedly defamatory material to determine, as a matter of law, if it is actionable. *Baker v. Los Angeles Herald Examiner*, 721 P.2d 87, 90–91 (Cal. 1986); *Riley,* 529 A.2d at 252–53, *Slawik*, 428 A.2d at 17. "Part of the totality of the circumstances used in evaluating the language in question is whether the statements were made," as they allegedly are here, "by participants in an *adversarial setting*." *Ferlauto*, 74 Cal.App.4th at 1401 (emphasis added); D.I. 1 ¶¶ 14, 87 (the parties are competitors). "'[W]here potentially defamatory statements are published in a . . . setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion.'" *Ferlauto*, 74 Cal.App.4th at 1401–02 (citing *Greenbelt Publ. Ass'n v. Bresler*, 398 U.S. 6, 13-14 (1970); *Letter Carriers v. Austin*, 418 U.S. 264, 284, 286 (1974)). Courts routinely reject claims for epithets and expressions of contempt, such as calling a plaintiff and his behavior: "sleazy, illegal and unethical," *James v. San Jose Mercury News*, 17 Cal.App.4th 1, 12–15 (1993); "immoral," *McGarry v. Univ. of San Diego*, 154 Cal.App.4th 97, 116–17 (2007); dishonest and "exploitative," *Nicosia v. De Rooy*, 72 F.Supp.2d 1093, 1101, 1105-06, 1107 (N.D. Cal. 1999); "exploit[ative]" of young women, *Hoang v. Tran*, 60 Cal.App.5th 513, 522, 533–34 (2021); mean and greedy, *Ferlauto*, 74 Cal.App.4th at 1405; a "hoax," *Owens v. Lead Stories, LLC*, 2021 WL 3076686 (Del. Super. July 20, 2021), a*ff'd mem.,* 273 A.3d 275 (Del 2022); an "abuse of office," *Slawik*, 428 A.2d at 17; or "loot[ing]" of a

company, *Agar*, 151 A.3d at 482. *Accord Intercity Maint. Co. v. Local 254*, 241 F.3d 82, 89 n.6 (1st Cir. 2001) (labeling plaintiff a "sweatshop" was "non-actionable opinion, 'rhetorical hyperbole'"). Here, even Plaintiffs acknowledge that epithets against them are "hyperbolic," D.I. 1 ¶ 42, which is expressly protected speech. *Greenbelt*, 398 U.S. at 14.

Plaintiffs also vaguely complain about references in the Article to "a lawsuit over exploitative work conditions." D.I. 1 ¶ 39. Such reference is protected under the fair report privilege because the Article fairly reports on—and hyperlinks to—a class action lawsuit against Valnet alleging "unfair/unlawful business practices" to gain an advantage over competitors. D.I. 1-1 at 2, 5; Ex. 8 ¶¶ 2-4, 71-74. And there is yet another lawsuit against Valnet with similar allegations. Ex. 7 ¶¶ 2, 13, 21-38, 143-148. In any event, whether a workplace is "exploitative" is a matter of protected opinion, *see, e.g., Nicosia, Hoang, Intercity Maint. Co.*

Finally, it is substantially true, and therefore constitutionally protected, that Valnet's website does not mention Youssef's undisputed past as a porn mogul. D.I. 1 ¶¶ 26, 40; Ex. 10; *Masson v. The New Yorker*, 501 U.S. 496, 516 (1991) ("substantial truth" as a defense to defamation is measured by the "gist" or "sting" of the statement and whether it would have the same effect on the mind of the recipient as the precise truth); *Carver v. Bonds,* 135 Cal.App.4th 328, 344 (2005) (same); *Page*, 270 A.3d at 844-46 (same). The "gist" or "sting" is that Valnet's website undisputedly does not mention Youssef's porn-affiliated past, not whether it was once on Valnet's website and then later removed or "scrubbed" from the site. *See id.*

### 5.    Plaintiffs' Pleading of Actual Malice is Deficient

Even if the allegedly defamatory statements were made, or implications reasonably implied, and are otherwise actionable, Plaintiffs (both of whom are public figures) failed to adequately plead actual (*i.e.*, constitutional) malice. "Every circuit that has considered the matter

has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice." *Nelson Auto Center, Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020) (cleaned up).[15] Actual malice must be pleaded as to *each* allegedly false statement. *See Tavoulareas v. Piro,* 817 F.2d 762, 794 (D.C. Cir. 1987) (public figure "defamation plaintiffs cannot show actual malice in the abstract; they must demonstrate actual malice *in conjunction* with a false defamatory statement") (emphasis in original); *Reader's Digest,* 690 P.2d at 617 (public figure's showing of actual malice must be tied to "the libelous statement").

These authorities make clear that Plaintiffs' conclusory allegations of actual malice—which is all Plaintiffs allege here—are inadequate. D.I. 1 ¶¶ 30, 36–38, 69. For example, Plaintiffs vaguely allege that The Wrap should have "attain[ed]" public records on the money laundering issue. *Id*. ¶ 36. But there is no duty to investigate, seek out, or include corroborating evidence to avoid actual malice. *St. Amant v. Thompson*, 390 U.S. 727, 733 (1968); *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 359–60 (3d Cir. 2020).[16] The libel claim fails for this additional constitutionally-based reason.

## B.    THE THIRD AND FOURTH CLAIMS ALSO FAIL UNDER SECTION 425.16 AND RULE 12(b)(6)

Valnet's third and fourth claims are derivative of the libel claim because they are based on the Article and its purportedly "misleading and disparaging statements" and "false allegations."

---

[15] *See also Couch v. Verizon Comms Inc.*, 105 F.4th 425, 432–34 (D.C. Cir. 2024); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 701–702 (11th Cir. 2016); *Biro v. Conde Nast*, 807 F.3d 541, 544–45 (2d Cir. 2015); *McDonald v. Wise*, 769 F.3d 1202, 1220 (10th Cir. 2014); *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013); *Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 377–78 (4th Cir. 2012); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012); *accord Nicosia,* 72 F.Supp.2d at 1109–10 (granting anti-SLAPP without leave to amend); *Page*, 270 A.3d at 849–51 (affirming dismissal).

[16] In any event, the court records support The Wrap's position as discussed above.

D.I. 1 ¶¶ 88-95, 101–08.[17] First, California and Delaware courts both reject ancillary claims derivative of a defamation claim where, as here, the publication at issue is constitutionally protected and/or privileged. *Reader's Digest*, 690 P.2d at 624 ("liability cannot be imposed on any theory for what has been determined to be a constitutionally protected publication"); *Blatty*, 728 P.2d at 1184 (dismissing several claims derivative of a defamation claim, including intentional interference, because they "have as their gravamen the alleged injurious falsehood of a statement, [so] they must satisfy the requirements of the First Amendment"); *Owens,* 2021 WL 3076686 at *17 (following *Blatty*), *aff'd mem.,* 273 A.3d 275 (Del. 2022); *Bove v. Goldenberg*, 2007 WL 446014 at *4 (Del. Super. Feb. 7, 2007) (dismissing defamation and interference claims because interference claim was "also barred by the absolute privilege to the same extent that it applied . . . in connection with the plaintiff's claim for defamation"). Second, where ancillary claims are based on the same facts as a defamation claim, they are "superfluous and must be dismissed." *Couch v. San Juan Unif. Sch. Dist.*, 33 Cal.App.4th 1491, 1504 (1995); *Med. Marijuana*, 46 Cal.App.5th at 896–97 (granting anti-SLAPP motion as to unfair competition claim based on same publications as defamation claim). Third, Valnet insufficiently pleaded its two ancillary claims for reasons that overlap with the libel claim—*e.g.*, failure to allege actionable representations of fact. *Accenture Global Svcs. GMBH v. Guidewire Software Inc.*, 581 F.Supp.2d 654, 664–68 (D. Del. 2008).

## CONCLUSION

WHEREFORE, for the foregoing reasons, if the Court does not grant The Wrap's motion to transfer, then The Wrap respectfully requests that the Court grant this motion, in whole or at least in part, pursuant to Section 425.16, or, in the alternative, Rule 12(b)(6), with prejudice.

---

[17] To the extent the fourth claim is based on alleged "harassment" of third parties to read or provide comment for the Article, D.I. 1 ¶ 101, Valnet does not have standing to bring such a claim.

Respectfully submitted,

/s/ David L. Finger
David L. Finger (#2556)
One Commerce Center
1201 N. Orange St., 7th Fl.
Wilmington, DE 19801
302-573-2525
dfinger@delawgroup.com

Jean-Paul Jassy (pro hac vice)
Jordyn Ostroff (pro hac vice)
Amanda Harris (pro hac vice)
JASSY VICK CAROLAN LLP
355 S. Grand Avenue, Suite 2540
Los Angeles, CA 90071
310-870-7048
jpjassy@jassyvick.com
jostroff@jassyvick.com
aharris@jassyvick.com

Attorneys for Defendant

Dated: June 19, 2025