IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VALNET INC. AND HASSAN YOUSSEF<br><br>Plaintiffs,<br><br>v.<br><br>THE WRAP NEWS INC.,<br><br>Defendant. | Civil Action No. 1:25-cv-00507-JLH |

**DEFENDANT THE WRAP NEWS INC.'S REPLY BRIEF IN SUPPORT OF ITS CONDITIONAL MOTION TO DISMISS**

David L. Finger (#2556)
One Commerce Center
1201 N. Orange St., 7th Fl.
Wilmington, DE 19801
302-573-2525
dfinger@delawgroup.com

Jean-Paul Jassy (*pro hac vice*)
Jordyn Ostroff (*pro hac vice*)
Amanda Harris (*pro hac vice*)
JASSY VICK CAROLAN LLP
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
310-870-7048
jpjassy@jassyvick.com
jostroff@jassyvick.com
aharris@jassyvick.com

*Attorneys for Defendant*

Dated: August 29, 2025

# **TABLE OF CONTENTS**

Page

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 1

I.      THE WRAP'S MOTION TO DISMISS IS ENTIRELY CONSISTENT WITH FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) .................................................. 1

II.     THE COMPLAINT DOES NOT SURVIVE A RULE 12(b)(6) CHALLENGE ........... 3

        A.      Plaintiffs' Claim Are Limited to the Implications Alleged in Paragraph 65 ....... 3

        B.      Plaintiffs Fail to State a Claim for Defamation ..................................................... 3

        C.      Plaintiffs' Interpretation of the Fair Report Privilege Is Too Narrow ................ 6

        D.      Plaintiffs Are Public Figures Who Did Not Adequately Plead Actual Malice ... 8

        E.      Plaintiffs' Ancillary Claims Fall with the Defamation Claim .......................... 10

III.     THE WRAP SATISFIED ITS BURDEN UNDER SECTION 425.16 ........................ 10

CONCLUSION ........................................................................................................................... 10

# TABLE OF AUTHORITIES

**CASES**                                                                                                               **Page(s)**

*Adelson v. Harris*,
   774 F.3d 803 (2d Cir. 2014) ..................................................................................................2

*Blatty v. New York Times Co.*,
   728 P.2d 1177 (Cal. 1986)......................................................................................................4

*Burill v. Nair*,
   217 Cal.App.4th 357 (2013) ...................................................................................................8

*Chamber v. NASCO, Inc.*,
   501 U.S. 32 (1991)..................................................................................................................2

*Chin v. Chrysler LLC*
   538 F3d 272 (3d Cir. 2008).....................................................................................................2

*Colt v. Freedom Commc'ns, Inc.*,
   109 Cal.App.4th 1551 (2003) .................................................................................................7

*Ferlauto v. Hamsher*,
   74 Cal.App.4th 1394 (1999) ...................................................................................................7

*Ferrari v. Forbes Media LLC*,
   2025 WL 2201083 (D. Del. Aug. 1, 2025)..........................................................................3, 5

*Forsher v. Bugliosi*,
   608 P.2d 716 (Cal. 1980).................................................................................................3, 4, 5

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974)................................................................................................................9

*Gilead Scis., Inc. v. Abbot Labs., Inc.*,
   2015 WL 1191129 (D. Del. Mar. 13, 2015) ...........................................................................2

*Handelsman v. San Francisco Chron.*,
   11 Cal.App.3d 381 (1970).......................................................................................................7

*Harte Hanks Commc'ns v. Connaughton*,
   491 U.S. 657 (1989)..............................................................................................................10

*Herring Networks, Inc. v. Maddow*,
   8 F.4th 1148 (9th Cir. 2021) ................................................................................................1, 2

*Jennings v. Telegram-Tribune Co.*,
   164 Cal.App.3d 119 (1985).....................................................................................................7

*La Liberte v. Reid*,
   966 F.2d 79 (2d Cir. 2020) ......................................................................................................2

*Mac Isaac v. Politico LLC*,
   2025 WL 2437093 (Del. Aug. 25, 2025) ................................................................................4

*McCafferty v. Newsweek Media Grp., Ltd.*,
  955 F.3d 352 (3d Cir. 2020) ........................................................................................9

*Paterno v. Super. Ct.*,
  163 Cal.App.4th 1342 (2008) ..................................................................................7, 8

*Paucek v. Shaulis*,
  349 F.R.D. 498 (D.N.J. 2025) ......................................................................................2

*Perlman v. Vox Media, Inc.*,
  2020 WL 4730406 (Del. Super. Aug. 14, 2020), *aff'd mem*, 249 A.3d 375
  (Del. 2021) ..................................................................................................................4

*Read v. News-Journal Co.*,
  474 A.2d 119 (Del. 1984) ............................................................................................7

*Riley v. Moyed*,
  529 A.2d 248 (Del. 1987) ............................................................................................3

*ShotSpotter Inc. v. VICE Media, LLC*,
  2022 WL 2373418 (Del. Super. Jun. 30, 2022) .............................................6, 7, 9, 10

*Tavoulareas v. Piro*,
  817 F.2d 762 (D.C. Cir. 1987) .....................................................................................9

*Toptal, LLC v. Bloomberg L.P.*,
  2025 WL 2172608 (Del. Super. July 31, 2025) .......................................................7, 9

## FEDERAL STATUTES

18 U.S.C. § 1960 ..................................................................................................................8

## FEDERAL RULES

Fed. R. Civ. P. 12 ...........................................................................................................1, 2
Fed. R. Civ. P. 12(b)(6) ............................................................................................1, 2, 13

## STATE STATUTES

Cal. Code Civ. Proc. § 425.16 ....................................................................................1, 2, 10
Cal. Code Civ. Proc. § 425.16(c) .........................................................................................10

## OTHER AUTHORITIES

Courtney J. Linn, *One-Hour Money Laundering: Prosecuting Unlicensed Money
  Transmitting Businesses Under 18 U.S.C. § 1960*, 8 U.C. Davis Bus.
  L.J. 138 (2007) ............................................................................................................8

# INTRODUCTION

As Defendant The Wrap News, Inc. ("The Wrap") made clear in its opening brief: "This anti-SLAPP motion is brought pursuant to Rule 12." D.I. 19 at 6. If the Court denies The Wrap's motion to transfer venue, then it should grant its motion to dismiss the State Law Claims because, under the standards of Fed. R. Civ. P. 12(b)(6), Plaintiffs Valnet Inc. and Hassan Youssef (collectively, "Plaintiffs") have not stated a claim. And, because Plaintiffs do not dispute that their State Law Claims arise from speech on matters of public interest, The Wrap should be awarded a recovery of its attorneys' fees under the substantive portion of California's anti-SLAPP statute, Cal. C. Civ. P. § 425.16 ("Section 425.16").

# ARGUMENT

### I.  THE WRAP'S MOTION TO DISMISS IS ENTIRELY CONSISTENT WITH FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6).

The Wrap does not ask this Court to impose *any* burden on Plaintiffs beyond that required by Rule 12(b)(6). The Wrap expressly and repeatedly acknowledges that, because its motion to dismiss is based on legal arguments attacking the face of Plaintiffs' Complaint, it must be examined under the standards of Rule 12(b)(6). *See, e.g.,* D.I. 19 at 1, 6, 11; *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155–56 (9th Cir. 2021) (anti-SLAPP "motions that challenge the legal sufficiency of complaints … are analyzed pursuant to Rule 12").[1] It is only if the Court *also* concludes that *The Wrap* (not Plaintiffs) overcame an extra hurdle under Section 425.16 to show that the Article addressed matters of public interest, *see* D.I. 19 at 7–10—**which Plaintiffs do not dispute**—that The Wrap asks the Court to permit The Wrap to file a motion for attorneys' fees.

The Wrap's motion to dismiss pursuant to the standards of Rule 12(b)(6) is fully consistent

---

[1] The Wrap asks the Court for judicial notice of materials in support of its motion. D.I. 19 at 2 n.2, 3 n.3, 7 n.5, 9 n.8, 10 n.11. Plaintiffs do not contest any of The Wrap's requests for judicial notice.

with case law in the Ninth Circuit, *see Herring Networks*, 8 F.4th at 1155–56, as well as district court decisions in the Third Circuit.² The Ninth Circuit's anti-SLAPP standard is based on Rule 12 where, as here, the defendant invokes Rule 12: "The district court must grant the defendant's [anti-SLAPP] motion … if the plaintiff presents an insufficient legal basis for the claims or no reasonable jury could find for the plaintiff." *Id.* at 1155 (cleaned up). In *Gilead Scis., Inc. v. Abbott Labs., Inc.*, 2015 WL 1191129 (D. Del. Mar. 13, 2015), this Court did exactly what The Wrap seeks here: it granted an anti-SLAPP motion under California law based on the standards of Rule 12(b)(6). *Id.* at *3, *9. Plaintiffs do not dispute the wisdom of *Gilead*, but claim it is outdated. D.I. 7. But *less than four months ago*, the District of New Jersey also did exactly what The Wrap asks here: it awarded fees under an anti-SLAPP statute after concluding that a complaint could not survive a motion brought under the standards of Rule 12. *Paucek v. Shaulis*, 349 F.R.D. 498, 513–26 (D.N.J. 2025). The recent decision in *Paucek* is reinforced by controlling precedent. *Id.* at 516–17.³

Contrary to Plaintiffs' contention, the Second Circuit's decision in *La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020), is not on point because The Wrap is *not* asking this Court to impose a standard above Rule 12. Moreover, as The Wrap requests here, the Second Circuit has held that application of an anti-SLAPP law's fee-shifting provision is "unproblematic." *Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (applying Nevada's anti-SLAPP law's fee-shifting provision).

The Wrap agrees that its motion is subject to the standards of Rule 12, *see* D.I. 19 at 6, so the only questions remaining are whether: (1) Plaintiffs' Complaint survives a challenge under

---

² The parties agree that the Third Circuit has not yet ruled on the use of anti-SLAPP motions.

³ *Chambers v. NASCO, Inc.*, 501 U.S. 32, 52–54 (1991) ("fee-shifting rules that embody a substantive policy, such as a statute which permits a prevailing party in certain classes of litigation to recover fees" apply in federal diversity cases); *Chin v. Chrysler LLC*, 538 F.3d 272, 279 (3d Cir. 2008) (fee-shifting statutes are substantive for purposes of *Erie*).

Rule 12; and (2) to recover fees, The Wrap satisfied its burden to show Section 425.16 applies.

## II. THE COMPLAINT DOES NOT SURVIVE A RULE 12(b)(6) CHALLENGE.

### A. Plaintiffs' Claims Are Limited to the Implications Alleged in Paragraph 65.

Despite the Complaint's scattershot gripes, Plaintiffs' Opposition clarifies and confirms that their case boils down to the following alleged libels: (1) "Youssef was accused of money laundering and was forced to pay a $2.1 million fine as punishment"; and (2) "Youssef somehow condoned, facilitated or allowed the publication of the Video, and ignored repeated pleas by the victim of the rape depicted in the Video to have the Video removed." D.I. 1 ¶ 65; *see also id.* ¶ 66; D.I. 26 at 2, 10-14.[4] Plaintiffs do not—because they cannot—dispute that neither of these two statements actually appears in the Article. *See* D.I. 1-1; D.I. 19 at 11. Instead, Plaintiffs fall back on an unreasonable defamation-by-implication argument. *See* D.I. 26 at 2, 14.

### B. Plaintiffs Fail to State a Claim for Defamation-by-Implication.

Plaintiffs' claim for defamation-by-implication fails. Plaintiffs do not dispute two key points. First, under both Delaware and California law, courts reject unreasonable purportedly defamatory implications, as a matter of law. *See* D.I. 19 at 12–13.[5] Indeed, just a few days before Plaintiffs filed their Opposition, Judge Williams of this Court granted a Rule 12(b)(6) motion, holding that, despite the defendant's article's highly critical statements about the plaintiffs, the article could not "as a matter of law" support a defamation-by-implication claim. *Ferrari v. Forbes Media LLC*, 2025 WL 2201083 at *6–*7 (D. Del. Aug. 1, 2025). Second, Plaintiffs do not dispute

---

[4] Plaintiffs do not argue that other critical parts of the Article supports their claims. *See* D.I. 19 at 16-18 (explaining why Plaintiffs' other criticisms of the Article, *see* D.I. 1-1 ¶¶ 25–26, 39–43, 64, are not actionable, which reaffirms that their defamation claim is limited to Paragraph 65).

[5] *See, e.g., Riley v. Moyed*, 529 A.2d 248, 252 (Del. 1987) (holding that "an ordinary reader" would not draw the defamatory "inference" or "implication" urged by plaintiff); *Forsher v. Bugliosi*, 608 P.2d 716 (Cal. 1980) (affirming dismissal of defamation-by-implication claim).

3

that, under both California and Delaware law, defamation plaintiffs must show they are referenced either by name or by "*clear* implication." D.I. 19 at 11–12 (quoting *Blatty v. New York Times Co.*, 728 P.2d 1177, 1182 (Cal. 1986) (emphasis added); *Perlman v. Vox Media, Inc.*, 2020 WL 4730406 at *2 (Del. Super. Aug. 14, 2020) (same, citing *Blatty*), *aff'd mem*, 249 A.3d 375 (Del. 2021)). Earlier this week, the Delaware Supreme Court affirmed dismissal of a defamation claim, holding that it is a "question of law within the court's purview to decide at the motion to dismiss" stage whether a "*reasonable third party*" would understand a statement is "*about* the plaintiff." *Mac Isaac v. Politico LLC*, 2025 WL 2437093 at *7 (Del. Aug. 25, 2025) (emphasis in original).

    As a matter of law, neither of the purported implications at issue is reasonable as to either Plaintiff. With respect to Valnet, *neither* of the two allegedly defamatory implications mentions Valnet. D.I. 1 ¶ 65. The next paragraph confirms that neither statement mentions Valnet, alleging that the Article is "suggesting that Youssef *or his previous businesses* have been accused of money laundering and/or were involved in Pornhub's failure to remove the Video[.]" *Id.* ¶ 66 (emphasis added). Indeed, neither of the implications at issue could possibly refer to Valnet because—as the Article makes clear—the alleged money laundering and Video incidents happened in *2009*, but Valnet *did not exist* until *2012*. D.I. 1-1 at 9–10; *see also* D.I. 1 ¶¶ 8, 28, 31 (confirming dates).

    The purported implications at issue are also unreasonable as to Youssef when the Court compares The Wrap's Article, D.I. 1-1, to the implications that Plaintiffs ask this Court to infer, D.I. 1 ¶ 65. For perspective, it is helpful to bear in mind the California Supreme Court's decision in *Forsher*, where the defendant's book *Helter Skelter* stated *inter alia* that: the plaintiff and his companion took murder victim Ronald Hughes to a desolate area near where he was later found murdered; the police never verified plaintiff's alibi; and plaintiff's companion later was murdered, in part because she knew too much about Hughes's killing. 608 P.2d at 717–21. Despite these

4

connections and more, the court held, as a matter of law, that the book "neither expressly nor by fair implication charges [the plaintiff] with killing or aiding or abetting the killing" of Hughes, and held that courts "must … refrain from scrutinizing what is not said to find 'a defamatory meaning which the article does not convey to a lay reader.'" *Id.* at 722–23.

Judge Williams's recent decision in *Ferrari* is also instructive in its similar application of Delaware law. 2025 WL 2201083. In *Ferrari*, the plaintiffs (a CEO and his company) asserted that the defendant publisher's article titled *Buyer Beware: These Yield-Gushing Oil Bonds Could Derail Your Retirement* implied that plaintiffs were running a Ponzi scheme where the article asserted that the company's "core competency seems to be raising funds from yield hungry investors," called the company a "chimera" and "part junk-bond dealer," and asserted that "there's nothing stopping [the company] from using the funds collected from retail investors to meet its obligations to the Wall Street behemoth [Fortress]." *Id.* at *1, *6 (emphasis omitted).[6] Nevertheless, the Court held that "the Article and statements therein cannot, as a matter of law, be reasonably understood to imply that [the plaintiffs] were operating a Ponzi Scheme. The inferential leaps required to sustain such an implication are simply untenable." *Id.* at *7.

The two implications asserted in Paragraph 65 come nowhere close to those rejected as a matter of law in *Forsher* and *Ferrari*. The Wrap's Article does not state—and cannot reasonably be understood to imply—that Youssef "somehow condoned, facilitated or allowed" the Video to be posted and remain on pornhub.com. *Compare* D.I. 1-1 at 9–10 *with* D.I. ¶ 65. The Article

---

[6] The article in *Ferrari* also recounted: the CEO's assurances of profitability; plaintiffs' targeting of retirement age people with a "barrage of enticing webinars" for "risky oil bonds" designed to "bypass" regulations; the company's practice of paying interest "with additional bonds instead of cash;" how the company "gets around" restrictions on taking commissions directly from investors; federal investigations into the company "for potentially misleading statements;" and the CEO's "criminal history, reputation and family;" and more. *Id.* at *1-*3, *6.

5

*distances* Youssef from Interhub (the company that actually owned the domain pornhub.com, which was purchased by a different person (Matt Keezer), and "ran into trouble" for hosting the Video) by noting that Youssef was merely part of a "group" that founded the "separate company" Brazzers, which was in turn merely a "silent partner" in Interhub. D.I. 1-1 at 9–10.[7] It is, as Judge Williams put it in *Ferrari*, "simply untenable" to draw from the Article the convoluted implication that Youssef "somehow" *personally* "condoned, facilitated or allowed" the Video as one of several founders of a company that was a silent partner in the separate company that owned the website purchased by yet another third party that hosted the Video.

The other purported implication alleged by Plaintiffs is also untenable. The Article does not reasonably imply that Youssef—described in the Article as a "civil engineer by training" who "did analytics"—had a personal hand in the "wire transfers from Israel and other countries" giving rise to the federal action in Georgia. D.I. 1-1 at 8, 10. Plaintiffs also claim that the Article's discussion on this issue accuses "Youssef and Mansef" (but, notably, not Valnet, which did not yet exist) of "criminal conduct" and having paid a "criminal fine." D.I. 26 at 15–16. However, the words "crime" and "criminal" do not appear anywhere in the Article. *See* D.I. 1-1.

### C. Plaintiffs' Interpretation of the Fair Report Privilege Is Too Narrow.

Even if the alleged implication about the money transfers was reasonable — which The Wrap does not concede — Plaintiffs fail to convincingly rebut The Wrap's privilege argument. *Compare* D.I. 26 at 15–16 *with* D.I. 14–16. Plaintiffs concede, as they must, that California's statutory fair report privilege is "robust and absolute." D.I. 26 at 15. They do not dispute that Delaware courts recognize that California's privilege applies broadly. *ShotSpotter Inc. v. VICE*

---

[7] The Article also does not suggest that Mansef bought or ran pornhub.com. D.I. 1-1. Neither Plaintiffs' Complaint nor the Opposition dispute the accuracy of the Article's *actual statements* about the Video and Youssef, Keezer, Brazzers, Mansef, Interhub or Pornhub. *See* D.I. 1, 1-1, 26.

6

*Media, LLC*, 2022 WL 2373418 at *8 (Del. Super. Jun. 30, 2022). And Plaintiffs do not argue that Delaware's analogous privilege is any narrower (it is not) or would lead to a different result (it does not). *See Read v. News-Journal Co.*, 474 A.2d 119, 120–21 (Del. 1984).[8] Nor do Plaintiffs contest that courts are not to engage in "hermeneutical exercises," or demand that reports must have legal precision to apply the privilege. D.I. 19 at 14–16.[9] To the contrary, in their broad application of the privilege and eschewing of legal exactitudes, courts have found the following to be absolutely protected: calling civil conversion "outright theft," *Handelsman*, 11 Cal.App.3d at 387–88; describing failing to file tax returns as "tax fraud" and "tax evasion," *Jennings*, 164 Cal.App.3d at 123–24, 127; and publishing a report with "some errors" describing why plaintiffs entered a federal consent decree with the SEC, *Colt*, 109 Cal.App.4th at 1558–59. Plaintiffs make no effort to address or distinguish *any* of these authorities, implicitly conceding their applicability.

All of the foregoing concessions are significant because if the Court concludes that the broad privilege applies, then it applies absolutely to bar liability. Plaintiffs incorrectly suggest that courts cannot decide whether the privilege applies, D.I. 26 at 16, but that is *exactly* what courts in Delaware and California routinely do as they compare official records to defendants' reports to apply the privilege and reject defamation claims, D.I. 19 at 14–15.[10] Here, as in those cases, no

---

[8] In *Toptal, LLC v. Bloomberg L.P.*, the court acknowledged that the fair report privilege applies where "the challenged statements are directly reporting on" a proceeding, but held that the statements at issue did "more than just report on the [underlying] litigation. They discuss underlying facts and provide commentary." 2025 WL 2172609 at *16 (Del. Super. July 31, 2025). Here, by contrast, the purported implication arises from the Article's direct reporting on the Georgia litigation. *See* D.I. 1-1 at 7–8, 10.

[9] *See, e.g., ShotSpotter*, 2022 WL 2373418 at *8; *Paterno v. Super. Ct.*, 163 Cal.App.4th 1342, 1352–55 (2008); *Colt v. Freedom Commc'ns, Inc.*, 109 Cal.App.4th 1551, 1559 (2003); *Ferlauto v. Hamsher*, 74 Cal.App.4th 1394, 1404 (1999); *Jennings v. Telegram-Tribune Co.*, 164 Cal.App.3d 119, 125 (1985); *Handelsman v. San Francisco Chron.*, 11 Cal.App.3d 381, 387–88 (1970).

[10] *See, e.g., ShotSpotter*, 2022 WL 2373418 at *8 (comparing defendant's article to plaintiff's complaint to apply privilege, and granting motion to dismiss); *Read*, 474 A.2d at 120–21 (same, affirming dismissal for failure to state a claim); *Colt*, 109 Cal.App.4th at 1559-60 (comparing

discovery is necessary for the Court to compare the judicially noticeable court records to the Article, and to conclude that the privilege applies. *See also Paterno*, 163 Cal. App. 4th at 1354–55 (finding report was absolutely privileged even though it did not supply the "context" the plaintiff demanded). Here, the Georgia court records show that the United States Secret Service, Organized Fraud Task Force seized $6.4 million claimed by Mansef (which Plaintiffs describe as "Youssef's company," D.I. 1 ¶ 34), and then Mansef forfeited $2.2 million via a Consent Order in the face of a claim brought by the United States under 18 U.S.C. § 1960 for operation of an unlicensed money transmitting business. D.I. 19-1 and 19-3 at ¶¶ 3, 5–7, 14–15, 35–36; D.I. 19-2 at 2–4; D.I. 19-4 at 2–5. That tracks what the Article reported on the matter. *Compare id. with* D.I. 1-1 at 7–8, 10.

Plaintiffs' criticisms of the Article are that: (1) Youssef was not charged "criminally" and paid no "criminal" penalty; and (2) that there were no accusations of "money laundering" in the Georgia action. D.I. ¶ 65; *see also id.* ¶¶ 31–35; D.I. 26 at 16. First, nowhere in the Article does it state that Youssef (or anyone else) was charged criminally or paid a criminal penalty. *See* D.I. 1-1. Second, Plaintiffs' contention that 18 U.S.C. § 1960 cannot be considered a money laundering statute is contradicted by contemporaneous analysis that Plaintiffs fail to address. *See* D.I. 19 at 16 n.13 (citing Courtney J. Linn, *One-Hour Money Laundering: Prosecuting Unlicensed Money Transmitting Businesses Under 18 U.S.C. § 1960,* 8 U.C. Davis Bus. L.J. 138 (2007)). But, even if it were not a "money laundering" law, the privilege does not require legal exactitudes so long as the gist of the report fairly captures the records, which the Article here does. *See* D.I. 19 at 14–15.

### D. **Plaintiffs Are Public Figures Who Did Not Adequately Plead Actual Malice.**

Plaintiffs do not dispute that public figure defamation plaintiffs must, under the

---

article and records, and affirming that privilege barred defamation claim in anti-SLAPP context). The court in *Burill v. Nair,* 217 Cal.App.4th 357, 396–98 (2013), recognized it is "for the court to decide" whether a "privileged occasion exists," but concluded it did not apply in that case.

8

*Iqbal/Twombly* standard, plead "facts sufficient to give rise to a reasonable inference of actual malice" as to *each* purportedly false and defamatory communication. *See* D.I. 19 at 19; *see also McCafferty v. Newsweek Media Grp., Inc.*, 955 F.3d 352, 359–60 (3d Cir. 2020); *Tavoulareas v. Piro,* 817 F.2d 762, 794 (D.C. Cir. 1987)). Moreover, the Third Circuit "*heighten[s]* the actual malice standard" in a "defamation by implication case." *Toptal*, 2025 WL 2172609 at *15 (emphasis added); *ShotSpotter,* 2022 WL 2373418 at *14. And, contrary to Plaintiffs' contention, courts routinely determine that defamation plaintiffs are public figures and reject their inadequate pleading of actual malice on a motion to dismiss. *See, e.g.,* D.I. 19 at 19 n. 15. In *McCafferty*, 955 F.3d at 359–60, the Third Circuit affirmed the Rule 12 dismissal of a defamation claim, holding that a 12-year-old was a limited purpose public figure who failed to adequately plead actual malice.

Plaintiffs contest their status as public figures, but they ignore their pleaded facts and key law. D.I. 26 at 18–19. Plaintiffs do not address—and cannot avoid—the "broad rule" set forth by the Supreme Court: "public figures usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 343–44 (1974). Plaintiffs boast that Valnet's "27 publications and brands have *hundreds of millions* of readers and viewers each month." D.I. 1 ¶ 52 (emphasis added).[11] Youssef claims his reputation is intertwined with Valnet as its CEO. D.I. 26 at 2–5, 14; D.I. 1 ¶¶ 45–47; D.I. 19-17. Plaintiffs easily qualify as public figures by virtue of popular channels of communication *that they undisputedly control*.

Plaintiffs plead conclusory allegations, but not specific facts, akin to the many recent cases where courts dismissed defamation claims for failure to adequately plead actual malice. *Compare* D.I. 1 ¶¶ 30, 36–38, 69 *with McCafferty*, 955 F.3d at 360; D.I. 19 at 19 n. 15. Even in their

---

[11] *See also* D.I. 19-6 at 2 (asserting that the world's top media brands are "talking about" Valnet).

9

Opposition, Plaintiffs fail to articulate how they could show actual malice. D.I. 26 at 18–19. They point to court records, but those *support* the Article, *see* § II.C, *supra*, and do not evidence a "high degree of awareness . . . of probable falsity.'" *Harte Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 688 (1989).[12] And Plaintiffs do not and cannot reasonably allege that The Wrap *intended* to create an implication that Youssef personally controlled the Video, *ShotSpotter,* 2022 WL 2373418 at *14. Indeed, The Wrap denies that any such implication even exists.

### E.   Plaintiffs' Ancillary Claims Fall with the Defamation Claim.

Plaintiffs misread case law showing that their ancillary claims are superfluous, but, more critically, they *do not dispute* that, if the defamation claim fails, then so too must those ancillary claims which are based on the same allegations. *Compare* D.I. 19 at 19-20 *with* D.I. 26 at 20.

### III.   THE WRAP SATISFIED ITS BURDEN UNDER SECTION 425.16.

The Wrap has the burden to show that Section 425.16 applies to each of Plaintiffs' claims. D.I. 19 at 6. Plaintiffs do not dispute that: (1) there is a conflict between California's and Delaware's anti-SLAPP statutes; (2) California has the most significant relationship to the claims and parties; and (3) that Plaintiffs' claims arise from The Wrap's speech on matters of public interest. *Compare* D.I. 19 at 3-5, 7-10 *with* D.I. 26 at 9-10.[13] There is no real dispute Section 425.16 can and should apply so long as the Court uses Rule 12 standards to examine Plaintiffs' Complaint.

### CONCLUSION

The Wrap respectfully requests that the Court grant its motion to dismiss with prejudice, and rule that The Wrap may seek to recover its attorneys' fees under Cal. C. Civ. P. § 425.16(c).

---

[12] Plaintiffs fixate on a website with the word "f*ck" linked in the Article, but the name of a website does not mean that its contents are false or that the underlying court records support Plaintiffs.

[13] The parties do not articulate any other conflict of law here. But, to the extent the Court discerns any other conflict, The Wrap asks the Court to apply California law. *See* D.I. 19 at 4–5. A bill is currently with the Governor to expand Delaware's anti-SLAPP law. https://tinyurl.com/2hhmj2y3.

Dated: August 29, 2025

Respectfully submitted,

/s/ David L. Finger
David L. Finger (#2556)
One Commerce Center
1201 N. Orange St., 7th Fl.
Wilmington, DE 19801
302-573-2525
dfinger@delawgroup.com

Jean-Paul Jassy (pro hac vice)
Jordyn Ostroff (pro hac vice)
Amanda Harris (pro hac vice)
JASSY VICK CAROLAN LLP
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
310-870-7048
jpjassy@jassyvick.com
jostroff@jassyvick.com
aharris@jassyvick.com

Attorneys for Defendant